The court called the next case, please. Case number 3-15-0583. The people of the state of Illinois at the lead by Don Duffy vs. Benjamin Munoz, held by Steven Vero. Thank you. Mr. Vero, good morning. I'm Steve Vero with the Office of the State Appellate Defender, 3rd District, for the defendant, Benjamin Munoz. May it please the court. In this case, my client was convicted of drug-induced homicide and delivery of a controlled substance under accountability theory. In the briefs, I've raised two issues. First, that he was not proven guilty beyond reasonable doubt. And second, that if this court were to affirm his conviction for drug-induced homicide, it should vacate his conviction for delivery of a controlled substance based on a one-act-one-crime theory. The state has conceded at the second issue, the one-act-one-crime issue, so I'll just argue issue one here. There are two parts to my issue one argument. The first part is that my client was not accountable because he lacked the specific intent that Amy Schemberger give a bag of heroin to Peter Kaczynski, who was the person who ultimately took the heroin and died in this case. And also because common design theory does not apply to this case. The second part of my reasonable doubt argument is that my client was not accountable because the evidence in this trial was insufficient to prove that Amy Schemberger herself was guilty of delivery to Peter Kaczynski because her act of giving him heroin did not fall under the statutory definition of delivery where they were both in possession of the heroin jointly at the time that she gave it to him. I'd like to focus on the first part of my reasonable doubt argument, but I'd be happy to answer questions on either part if you're honest with me. My client, well in this case the facts are undisputed. My client received a phone call from Amy Schemberger on the day in question. She asked him to give her a ride to a certain location to buy heroin. She offered him three bags of heroin if he agreed to do so. He agreed to do so and he started to drive her out to the location. The evidence shows that at some point during the drive she had said that she needed some heroin because she had some physical pains and that her boyfriend, Peter Kaczynski, wanted some heroin because of his shoulder pain. My client drove out to the location. As the judge found and as the evidence showed, Amy Schemberger then paid the drug dealer money and received the drugs from the drug dealer and then gave my client his three bags of heroin that she had promised him. The trial court made that finding that Amy was the one that transferred the money and received the heroin? Judge Bertani-Tomczak did make that finding at the co-defendant Amy Schemberger's plea and sentencing hearing. Now she didn't specifically say that at my client's bus trial, but it's clear from her ruling that she was ruling on the basis of accountability and she had mentioned the different testimony. I think my point is in following up to your answer, the state doesn't take issue with the fact that you have asked us to consider the judge's remarks in connection with the co-defendant's case. In the state's brief, that's correct. They just don't take any issue, so would you view concession or waiver? Yes, absolutely. So construing what the judge said during the sentencing hearing, it's clear she didn't believe Ms. Schemberger. Absolutely, yes. And you want us to extrapolate backwards as the judge found her not credible in this case as well. Yes, yes. I believe the judge heard the testimony and was thinking that in the first place. Did the co-defendant have a trial or was it a plea? The co-defendant pled guilty. So the only opportunity the judge had to evaluate the credibility of Ms. S. was during the trial of your client. Yes, that's correct. Thank you. Absolutely. So essentially we do have these undisputed facts on. After all that occurred, my client drove Ms. Schemberger back home, dropped her off, and he drove away. He separately used one bag of his own heroin at some point, and Schemberger shared the heroin with her boyfriend Kaczynski and Sondra Egner. Unfortunately, Mr. Kaczynski had consumed an enormous amount of alcohol that day, and when he had one bag of heroin, he died of heroin and alcohol intoxication, and the other survived. Under these undisputed facts, specific intent was not shown. My client did not have the specific intent that Schemberger give heroin to Kaczynski. His only intent was to get three bags of heroin for his own personal use. Schemberger, in fact, testified that that was the only reason that he drove her out there, was to get the three bags for his own personal use. And he would have no reason to have shared her intent to give the heroin to Kaczynski because he's going to get his three bags either way. And indeed, he agreed to give the rod out to the location before he knew that she was going to give it to Kaczynski, because the only evidence in this case that he knew that it was going to be given to Kaczynski was relating to what she told him during the ride. So the fact that he agreed to do this before shows he was only concerned about getting his three bags of heroin. It did not matter to him. He did not have the intent for Schemberger to give this heroin to Kaczynski. When you were talking about the trial court's finding, does that incorporate a finding that Schemberger was the one who actually bought the drugs? Because that was at issue, wasn't it, as well? Yes, I think it's correct, as Justice Wright had pointed out earlier, that the state has waived any issue as to whether they could consider that testimony later on, or the judge's finding later on. So I think the judge found that that wasn't the case, certainly at Schemberger's plea and sentencing hearing. And I think it is correct, Justice McDade, that you could see it as being incorporated into the finding of the community's defense trial, as well. And if you look at the logic, the reasoning behind the judge's verdict, well, it's clearly she's talking about him knowingly facilitating the offense. She talked about, just a retirement time, I talked about my client knowingly facilitating the purpose of heroin and said that he, quote, knew when he dropped Schemberger off that she was going to deliver the heroin to Kaczynski. So she's clearly relying on an accountability theory and only finding that he had knowledge. Because what Schemberger told him during the ride, she did not find at any point that my client had the specific intent to deliver heroin to Kaczynski. So the judge did not, in fact, make the finding that was required to find my client guilty in this case, nor could she have in light of the evidence in this case. Common design theory also clearly does not fit this case at all. They had already, to the extent that there was any common design to achieve possession, that was completed. They had achieved their possession in part ways before she gave the heroin to Kaczynski. And certainly her act of giving heroin to Kaczynski was not in furtherance of any design to gain possession. There was no additional benefit to my client for that occurring. And also, notably, the judge did not find my client guilty on a common design theory. He said nothing about common design or Schemberger's act being in furtherance of any common design. So for those reasons, this court should reverse my client's convictions of drug abuse, homicide, and delivery of a controlled substance. In terms of Part 2, I think that's pretty well covered in the briefs. Unless Your Honors have any questions, I would just let the briefs cover that issue. Okay, if there are no additional questions, I would just ask that this court reverse my client's convictions. Thank you, Mr. Barrow. Thank you, Your Honors. Ms. Duffy, good morning. Good morning, Your Honors. Counsel? I'd first like to make myself clear that I'm not sure we've waived anything. I don't think it's relevant what the trial judge said, Ms. Schemberger's sentencing. Did your brief address that, that it's not relevant? No, but why would it be relevant? Well, that was the point that Mr. Barrow made in his brief. He relied on some of the comments the judge made, and you didn't address that argument. I'm aware he did, but, you know, it's irrelevant. Why don't you address that argument in your brief? That's what I'm wondering. We're talking about the evidence presented at this defendant's bench trial and whether or not it was sufficient to prove his guilt beyond a reasonable doubt. The fact that the trial judge, at a sentencing hearing of the co-defendant, ends up with enough evidence based upon what this co-defendant said, Ms. Schemberger, that it's difficult to believe what she says because she's inconsistent about what she says. What she did at this bench trial is testify that she called the defendant, she got some money from a third party. She called this defendant and told him she needed to go get some heroin. Mr. Kuczynski wanted some heroin. So they drove up, I'm not quite sure where, but anyway, they arrived at an intersection where there was a Walgreens, and she testified at this trial that she got out of the car, went across the street to a White Castle, while the defendant went and met this drug dealer he knew and had called named Boozy, bought 14 grams of heroin, and returned to the vehicle. She got back in the vehicle. He kept three grams of heroin that she admitted she promised to him, and gave the other 11 grams to Ms. Schemberger. During the course of the drive up there, she admitted to the defendant, Ms. Schemberger admitted to the defendant, that the heroin was for Mr. Kuczynski. They drove back to Mr. Kuczynski and her residence. Only for Mr. Kuczynski? That's what she said. That's what she said. That's the only reason. That's what she said. But all four of these people actually ended up with some heroin. When they arrived back at the residence, the defendant dropped Ms. Schemberger off with 11 grams of heroin, and she partook in it, and so did Mr. Kuczynski, of course, and a Sandra Eggner who had come up with the $650 to purchase the heroin. That's what she testified to at defendant's trial. That's the evidence, in part, that the judge relied upon in order to find this defendant guilty. What she had to find is that a person, this defendant, commits a drug-induced homicide when he violates Section 401 of the Illinois Controlled Substances Act. That's a delivery of the controlled substance in this particular section of heroin. You commit delivery of heroin, and any person's death is caused by the injection, inhalation, absorption, or ingestion of any amount of that controlled substance. Can there be any doubt that this defendant delivered heroin? He specifically drove to a place, called a drug dealer, bought the heroin, and took it back to these people. This is delivery. He is as guilty of delivery as Ms. Schemberger was. She pled guilty. She got a deal. I don't, you know, and she gave self-serving statements on her sentencing here. But there's no question this defendant delivered heroin. He delivered it to Mr. Kuczynski, and he delivered it to Ms. Eggman, just as Ms. Schemberger did. It doesn't, how many times does it matter? So are you suggesting it's accountability because Ms. Schemberger... No, I'm not. I'm saying he did it. He delivered it. He went to the drug dealer, and he bought it. He took possession of it. He went to the motor vehicle. He gave her some. He kept some, and he drove back with it, knowing exactly where that drug was going to go. He's guilty not as an accomplice. He's a principal in this. They both are. But the trial court found that he was guilty by accountability. I don't believe she did. She found him guilty. She found him guilty. Okay. And you disagree that the trial court's findings are... Your position is the trial court's findings are consistent with finding him guilty as the principal? Yes, I am. That would be consistent with the indictment that alleges he delivered the drugs to Mr. Kuczynski. Yes. And if the state's theory was accountability, perhaps they would have charged him with delivering to Ms. S., who in turn delivered. Correct. So I'm a little confused, and I'd like you to discuss the facts. The defendant in this case drove away before the substance ever reached the property where it was consumed. And that's a little bit different from some of the cases. I think in Rhea, the defendant went into the party, stayed at the party, handed the drugs to somebody else. So can you discuss why he should be guilty as principal when it's fairly clear he drove away? He wasn't even there. How can he be guilty? He drove away. He drove up to the house. She got out with the drugs and took the drugs inside because they had divvied them up by them. So he didn't personally hand them to Mr. Kuczynski? No. Do you believe that he needed to in order to deliver the substance? It doesn't matter what I think because the state has the obligation to develop your arguments. I'm trying to understand what you think. He delivered this drug when he, I guess the Congress question would be, before the defendant's actions would the heroin have been consumed by Mr. Kuczynski? And the answer to that is no. This defendant delivered by driving, by contacting the drug dealer, by purchasing the drugs, by driving the drugs back to the victim's residence. The fact that he's not the one who got out of the car and walked in the house, I don't think prohibits him from being guilty as a principal of this offense. Doesn't Kutz say that possession has to be exclusive? It can be simultaneously, but if you have joint possession, that there's no way you can unlawfully deliver something to your joint possessor. I guess that's the problem I'm having is he's part of this in terms that he is the driver. Perhaps he is the procurer that seems to even in his sentencing something, or in the finding at his hearing, his trial, that the judge seems to waver on. But we understand that the ball gets started by Ms. Schemberger, that she's in the car, that she's part of the transaction more than he is because it is in her hand from the moment it's procured. That's not what the evidence of this bench trial says. The evidence of this bench trial is this defendant was in possession of it first. He called the dealer, he met the dealer, he paid the dealer, he took the drugs. Well, I guess it's not the only evidence of this trial. Yes, it is. Because the judge in her findings talks about the statements that were made by the defendant and then again by Schemberger and then her testimony. And so my question is, is under the Coates case, is that if you have this simultaneous possession by these two individuals, can both of them be found to have made the delivery? Yes, and they were. Does the simultaneous possession have to take place at the location of the delivery? Because I think that's what Coates stands for. In your brief, you don't even discuss Coates. You don't cite Coates. And so I would like to understand why you think Coates does not apply. How are the facts in Coates different from the facts in this case? Well, I think the possession gets confusing. Did both of these co-defendants possess the drug? Yes, they did. Sure, they did. And when did this defendant's possession end, joint possession end? I would think when he dropped her off and she exited the car with 11 grams of it, but he still was in possession of three. So technically speaking, out of the 14 grams of heroin purchased, they both were in possession the entire time, from the time he took it from the drug dealer until the time it was all consumed by four different people. Can you distinguish the facts in Coates from the facts in this case? No, I don't think I can. The state or the defense has also relied heavily on Ray. How do you address Ray? Well, I think the difference is that, you know, the possession really didn't come into this. The question was whether or not there was a delivery of heroin. They were never charged with possession, but of course in order to deliver it you have to possess it. It's sort of a given. But as far as an element of the offense, it wasn't really addressed there either. The statute doesn't define delivery. I guess we're supposed to, you know, give it its plain and ordinary meaning. That's what I'm getting to. If they jointly possessed this, if I have something and I possess it jointly with you, how can you deliver something to me that I already possess? Mr. Kuczynski didn't already possess it. But there is no question and there is no doubt that the physical delivery of the item did not happen from this defendant to Mr. Kuczynski. Sure it didn't. Are you saying that he had the intent to purchase this? He knew why he was going to purchase it. He was going to get paid with part of it. He drove to the- But we need to back up because we were talking about possession. So when this is physically brought into the vehicle and into these, they are joint possessors of this. Yes, they are. And they're joint deliverers of the drug to Mr. Kuczynski. You're saying the joint possession equals a joint delivery. No, I'm not saying that at all. What are you saying? I'm saying that both of these people, even though they did possess it, but the possession is not an element of the offense. Delivery is an element of the offense. But, of course, you have to possess it in order to deliver it. What I'm saying is that the actions of this defendant amount to a delivery of heroin. If you drive the vehicle, agree to meet with the drug dealer, you purchase the drug, you drive back to the victim's residence with the drug, are we going to boil it down to, well, she's the one who got out of the car and went in the house and he didn't? Is that where we find a distinction in the delivery? No. He committed enough acts by the time he drove up to Mr. Kuczynski's residence to amount to delivery of that heroin. To whom? I agree with you 100%. He delivered it to Ms. S. But I need to understand what facts you think justify the trial court's finding that he also delivered it to Kuczynski. Because, as Justice McDavis pointed out, it sounds like the judge made the findings necessary for a theory of accountability. Your argument is no, no, no, no, no. He was the principal. And I'm having trouble understanding that. If the mailman pulls up to the mailbox outside of your house and puts your mail in, has he delivered it to you? Yes, he has. If the FedEx man drives up to your house and puts a package on your front porch, has he delivered that to you? Yes, he has. The mailman and the FedEx driver have reached your property. So did the defendant. He pulled up out in front of this house. First he goes and picks her up, and then he brought it back. He brought it back to the victim's residence. Did the trial court make an actual factual finding that he was the one who purchased the drugs from the drug dealer? No, she just based her finding of guilty on the evidence, and that was the evidence at the bench trial. So there was no factual finding to that fact? No, I don't think there was. I don't think she made any factual findings. Following up with Justice McDade's question, I'm going to direct you to page 5 of your brief. You concede that there's enough conflicting evidence here to create a reasonable doubt of whether he was guilty of the drug-induced homicide. I do. The defendant urges there was enough conflicting evidence to try to create reasonable doubt. He urges. Are you saying I said that? But overlooks the fact that it was the trier of fact who was charged with resolving conflicts and with choosing whom to believe. Yes. So I think you're conceding there's conflicting evidence. And then if that's not your intention, then this is a good chance. Well, what I'm saying is that he urges there was enough conflicting evidence to create a reasonable doubt. But I'm saying that it was the trial judge's duty, if there was conflicting evidence, to resolve that, which apparently she did. Okay. And then you go on in the very last part of the last sentence where you say the court could have found the essential elements of the crime beyond a reasonable doubt. The answer is yes. And I need to understand what facts cause you to answer yes. I'm getting tired of listening to myself about, you know, the defendant's involvement in this case. The testimony was that Ms. Schimberger called him, I need a ride to go get some heroin. Can you help me out? You know, Ms. Eggner, it was her money. She played that part in that. And told him that Mr. Kaczynski needed the heroin. So the defendant went over and picked her up and drove her to a location where he got out of the car, he called the drug dealer, went to meet the drug dealer, bought the dope from the drug dealer, went back to the car, and then drove back with Ms. Schimberger to Mr. Kaczynski's house with the drugs. If she got out of the car and went in the house, he didn't. So basically you're saying that once he took her in his car and they got these drugs that he had delivered them to her, and that's the end of the story. No, I'm saying he delivered them to Mr. Kaczynski when he took them back to his house. They both were guilty of delivery. How much, if any, of your argument is dependent on the assertion that it was actually Mr. Kamenius who came for the drugs, who actually bought them? If you take that fact out, and he drove her there and he drove her back? Well, I can't take it out, Justice McDade. I can't take it out because that's the testimony at this Venice trial. That's the evidence. I can't take the evidence out. But the trial court didn't make that finding. She didn't make any specific factual findings, but she found, based upon the evidence, that he was guilty. Well, it sounds like she found accountability. You're arguing that as a principle. Well, I think she discussed that, yes. I mean, it's the state that came up with several different theories in this case. Now, for purposes of this appeal, we can't do the prosecutor's work. We are trying to understand your position here, and your position is the judge found him guilty because he was the principal. Am I misstating your position? I'm saying the judge found him guilty, and that based upon the evidence introduced at this bench trial, that her decision, her finding of guilt, is supported by the evidence. That's what I'm saying. Since you don't distinguish Rhea and Coops, and you don't take issue with the trial court's findings at the sentencing hearing for the codefendant, how can we avoid ruling in favor of this defendant based on your arguments? I mean, we could probably come up with a theory, but is that our job? I don't think you can use the trial judge's comments at a codefendant's sentencing hearing to determine whether or not the evidence in this case proved his guilt. We may agree with you, but you didn't say that in your brief. Why not? You know, I think I felt that that was pretty unnecessary to do that. I mean, I have never seen a case decided on whether or not there was a reasonable doubt of a defendant's guilt that was based upon anything other than the evidence introduced at his trial. The law is pretty clear, has been for a long time. That's what you base a reasonable doubt issue on. It would be nice if you had said that in your brief, and then we wouldn't have to invent that logic to support our decision. I mean, Mr. Barrow has approximately 20 pages of analysis supported by case law and facts. And you've answered that, and he has pointed out to us, your answer is somewhat conclusory to all of his arguments. And so that makes our job just a little more difficult. You know, I can apologize for that. I should think that reviewing the evidence at this bench trial and the basic law, the elements of the offenses of delivery of a controlled substance and drug-induced homicide, that it would be clearer, not more confusing. Okay. I appreciate that answer. Sorry, I still have a question about this delivery and when it happens. If you have joint possession, how can you transfer the possession to somebody who already possesses it? Delivery is defined as actual attempted or constructive transfer of possession of a controlled substance. So if I jointly possess something with someone, how can I transfer the possession to somebody who already possesses it? Because you're saying that it's a constructive transport. I mean, because the heroin itself was never actually, the possession of it was never transferred from the defendant to Mr. Kaczynski physically. No, there was a middleman there. Somebody that you said already possessed it jointly with the defendant. So that she already possessed it. You said a couple of times that they were in joint possession of this. They were when they were in the vehicle after he purchased it. He possessed it? And I asked you if you were saying that he delivered it to her and you said no. You said no, he delivered it to Mr. Kaczynski, which doesn't get around the fact that delivery requires the transfer of possession, which you said they jointly possessed. And that's where I am, I don't know how we get around that. That if they possess something together, and she is the physical transfer of that possession to another, how the element can be established from the evidence at this bench trial, where there is nothing that defines, there is no finding and no testimony about how there was anything but joint possession of this. Up until the time the possession is transferred to Mr. Kaczynski, which does not happen by means of his defendant. Whether or not several people possess this drug is different, can be additional to the delivery of the drug, possession and delivery, two different offenses. Right, but delivery requires the transfer of possession. So it means that you have to have the exclusive, you have to have possession of this. Possession can be exclusive and simultaneous. The case law seems to recognize that two people can possess the same 11 grams of heroin. Right. And it doesn't matter who hands it to Mr. Kaczynski. It doesn't matter who hands it. They both possessed it and it ended up in his hands. But in this case, they didn't both possess it at the time it was handed to him. And that's the difficulty I have as well. I don't think that this defendant had to be, Well, like I said before, he wasn't possessing part of this drug. At the time, part of it was handed to Mr. Kaczynski. They split all of this up. I'm just getting, you know, that you have to actually put it in his hand to be the sole deliverer of this drug. Two people delivered the drug. They had the intent to deliver the drug. I know they were both in possession of it. He took possession first. They had joint possession when they were, all the time they were in the vehicle. And then she got out of the car with part of it. He remained in the car with another part of it. Time. Any more questions? Could I just say on issue number two, I did agree that there was a one act, one crime violation. If you reverse his conviction on drug-induced homicide, then it has to be affirmed his conviction for the delivery, not the homicide, but the delivery of the compulsive. Thank you. Mr. Barrow, any rebuttal? Before you start, can I ask you a question? Yes. If the trial court did not make a factual finding that Mr. Communius purchased the drug, did he ever have, well, two questions. Do we have then the right to make that determination for ourselves based on the evidence? No. We do not? No. We have the undisputed factual findings of the trial judge, and that's what we've got. It's the trial judge's job to make factual findings, and this court cannot make factual findings in place of the trial judge. So where we're not disputing the facts that the trial judge found, this court has to rely on what the trial judge found. Did the trial judge find that he was the one who purchased the drug? No. No. In fact, she specifically said he did not when she had an opportunity to make that finding, and at Communius' defense trial, she certainly did not specifically make that finding. In fact, she found him guilty under accountability theory entirely. So I guess the thrust of my question is based on the trial court's factual findings and the evidence the way that it's been presented. Did he ever have possession? He had possession of his three bags based on the trial judge's findings. Did he ever have possession of the other 11 bags? No. Those Schemberger received the drugs from the drug dealer, gave him three, and put the 11 in her pocket, and at that point she had the exclusive ability or intent to exercise control. Well, with Kaczynski, as Justice O'Brien had pointed out, she and Kaczynski and Wagner all intended to possess those 11 bags, but my client did not have the ability to have control of them at that point because she put them in her pocket. She was not going to give any more than those three that she had promised him to him. So he did not possess the drugs and ultimately ended up in Kaczynski's hands. I'd like to follow up before you get started on Ms. Duffy's last point about we should affirm the conviction on, send it back before sentencing on the Class II felony, which is unlawful delivery of a controlled substance. The indictment does not allege who he delivered to. Did the trial judge make any findings as to who he delivered his three grams to? No. Did the judge make any findings as to who he delivered the 11 grams to? The judge found that he knew that Schemer was going to get at Kaczynski, but that was the extent of the judge's finding, and that's not sufficient to prove him guilty in this situation. And, of course, So what is your position on remanding for the entry of a conviction in Count II? There's no basis for that that I can tell. The delivery element in this case was based on Schemberger delivering heroin to Kaczynski. That was the only delivery that occurred in this case, and the State conceded as much in its brief. I mean, it's waived to the extent that it's making new arguments here that it didn't make in its brief. Those points are waived anyway, and there was only that one delivery, Schemberger to Kaczynski, so there's no other delivery to set it back for on that. You make a really valid point, because I've heard a lot of arguments by the prosecution where a young assistant public defender comes up with a good theory on appeal, and the argument is you waived it. You can't raise it. You make a good point. Did you want to get started? I think we've covered pretty much what I had to say, unless there are any additional questions at this point. If I answer your questions, I've covered as many points as I wanted to. Thank you. Thank you, Melissa. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for any change.